**SO ORDERED: November 18, 2019.**



_____
James M. Carr
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JAN TELENE JOHNSON, ) | Case No. 16-00202-JMC-13 |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| JAN TELENE JOHNSON and ) | |
| JAN TELENE JOHNSON, as Settlor and Trustee ) | |
| of the IN GOD I TRUST REVOCABLE ) | |
| LIVING TRUST, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adversary Proceeding No. 19-50016 |
| ) | |
| MARLIN SCHWARTZ, ) | |
| ARTISAN INVESTMENT GROUP LLC, and ) | |
| CREATIVE FUNDING LLC d/b/a ) | |
| LEGACY ASSETS LLC, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING MOTION TO DISMISS

THIS PROCEEDING comes before the Court on *Defendants' Motion to Dismiss* filed by Marlin Schwartz ("Schwartz"), Artisan Investment Group LLC ("Artisan"), and Creative

Funding LLC d/b/a Legacy Assets LLC ("Legacy" and together with Schwartz and Artisan, "Defendants") on March 6, 2019 (Docket No. 15) (the "Motion"). The Court, having reviewed and considered the Motion, *Defendants' Brief in Support of Motion to Dismiss* filed on March 6, 2019 (Docket No. 16), *Plaintiffs' Response to Motion to Dismiss* filed by Jan Telene Johnson ("Debtor") and Jan Telene Johnson as Settlor and Trustee of the In God I Trust Revocable Living Trust (the "Trust"[1] and together with Debtor, "Plaintiffs") on April 3, 2019 (Docket No. 17), *Defendants' Reply to Plaintiffs' Response to Motion to Dismiss* filed on April 16, 2019 (Docket No. 18), and the *Amended Complaint for Damages for Default* filed by Plaintiffs on February 6, 2019 (Docket No. 5) (the "Complaint"), and being otherwise duly advised, now **GRANTS** the Motion.

*Factual Background*

A public online auction took place to liquidate real property owned by Debtor[2] and located at 8482 South Fairfax Road, Bloomington, Indiana (the "Real Property"), as ordered by the Court. As part of his bid at the auction, "Marlin Schwartz on Behalf of Artisan Investment Group LLC" submitted a "Realtor Client Registration" form. Schwartz also signed the "Terms & Conditions" form (the "Terms") with respect to his bid. He signed such form twice but did not indicate whether he was signing the form for himself or as a representative of another party. The Terms provide that "[a] 10% down payment must be paid by the successful bidder … . The down payment deposit will be non-refundable". At the close of the auction, Schwartz was

---

[1] According to paragraph 2 of the Complaint, the Trust, "for which [Debtor] is the trustee, is a revocable self-settled trust."

[2] In the various relevant pleadings and agreements, the ownership of the Real Property is ascribed inconsistently to both Debtor and the Trust.

declared the highest bidder with a bid of $505,000, plus a 10% buyer's premium of $50,500, for a total purchase price of $555,500.

After the auction, Schwartz advised that he wanted to purchase the Real Property in Legacy's name and subsequently submitted a "Bid Certification" form and "Real Estate Auction Purchase Contract" (the "Contract") on behalf of Legacy.  The Contract provides that "Buyer herewith agrees to deposit … the 10% buyer's premium as non-refundable earnest money deposit".  Schwartz executed a "Promissory Note" in the principal amount of $55,550 (the "Down Payment"), to be applied against the total purchase price.

The Down Payment was paid, but neither Schwartz nor Legacy proceeded to close the purchase of the Real Property.  The Contract contains a liquidated damages provision which states:

> Time being of the essence of this agreement, if the Buyer shall fail or refuse to perform this agreement of Buyer's part, and the Seller shall be ready and willing to perform, the Seller shall be entitled to retain the entire down payment / earnest money as liquidated damages for the breach of this agreement.

Plaintiffs retained the Down Payment.[3]

Thereafter, Plaintiffs sold the Real Property to the next highest bidder.  The sale to the next highest bidder was closed and resulted in net proceeds of $257,527.33.

On February 4, 2019, Plaintiffs commenced this adversary proceeding to recover damages, over and beyond the retained Down Payment, allegedly sustained as a result of Defendants' failure to close on the purchase of the Real Property.

---

[3] With regard to the amount of the "down payment/earnest money" referenced in the liquidated damages provision, there appears to be a possible inconsistency between the Terms and the Contract.  The Contract refers to the 10% buyer's premium ($50,500) as being a "non-refundable earnest money deposit", whereas the Terms provide for a non-refundable "10% down payment" without saying how the 10% should be calculated (e.g., is it, as with the buyer's premium, calculated based on the bid amount or is it 10% of the total purchase price).  None of the parties have asserted that the Down Payment amount of $55,550 was incorrect, so the Court need not address the issue.

*Positions of the Parties*

Defendants moved the Court to dismiss this action on the grounds that Plaintiffs failed to state a claim upon which relief can be granted. For the purposes of the Motion, Defendants do not contest that they failed to close on the purchase of Real Property. Rather, Defendants argue that the only remedy available to Plaintiffs for Defendants' failure to close is Plaintiffs' retention of the Down Payment as liquidated damages pursuant to the terms of the Contract.

Plaintiffs counter that the liquidated damages provision is not the exclusive remedy, and they are entitled to additional damages based on Defendants' breach of the Contract.

*Standard of Review*

Defendants filed the Motion pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b), arguing that Plaintiffs failed to state a claim upon which relief may be granted.

Courts review Rule 12(b)(6) motions as follows:

> A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Tamayo v. Blagojevich,* 526 F.3d 1074, 1082 (7th Cir. 2008).
>
> To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), such that the defendant is given "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570); *see also Tamayo,* 526 F.3d at 1082. The Supreme Court explained that the "plaintiff's obligation to provide the grounds of his entitlement to relief

> requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (quotation marks and brackets omitted); *see also Iqbal,* 556 U.S. at 678–79; *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009). Determining whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Iqbal,* 556 U.S. at 679.

*Trustees of Teamsters Union Local No. 142 Pension Trust Fund v. Cathie's Cartage, Inc.*, 2013 WL 2402990 at *3 (N.D. Ind. 2013).

As a preliminary matter, the parties have consistently conflated Schwartz, Artisan and Legacy in their various pleadings and papers. However, the Contract controls, and Artisan is not a party to the Contract. Artisan did not undertake any enforceable obligation with respect to the purchase of the Real Property. Therefore, even when viewed in the light most favorable to Plaintiffs, Plaintiffs have failed to state a claim against Artisan upon which relief can be granted. Accordingly, the Motion is GRANTED as to Artisan.

<u>*Breach of Contract Remedies*</u>

"Remedies for a breach of contract are intended to make the injured party whole by compensating him so that he will be in the same position he would have been in if the contract had been fully performed." *Matter of Witte*, 841 F.2d 804, 807 (7th Cir. 1988) (citing *Corbin, Contracts* § 1122; *Calamari & Perillo, Contracts* § 14-4). However,

> Contracting parties are free to negotiate in advance how breaches should be handled. For example, a nondefaulting party cannot recover in excess of the amount it agreed to in a liquidated damages clause, regardless of its actual damages. A contrary holding would raise equitable concerns similar to those addressed by the election-of-remedies principle, which holds that "[i]f a party to a contract breaks it, the other party can abandon the contract (unless the breach is very minor) and sue for damages, or it can continue with the contract and sue for damages. But if it makes the latter election, it is bound to the obligations that the contract imposes on it."

*Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786-87 (7th Cir. 2015) (internal citations omitted).

"A typical liquidated damages provision provides for the forfeiture of a stated sum of money upon breach without proof of damages." *Gershin v. Demming*, 685 N.E.2d 1125, 1127 (Ind. Ct. App. 1997) (citation omitted). "Notwithstanding a plethora of abstract tests and criteria for the determination of whether a provision is one for a penalty or liquidated damages, there are no hard and fast guidelines to follow. The question whether a liquidated damages clause is valid, or whether it constitutes a penalty, is a pure question of law for the court." *Id.* at 1128 (internal citations omitted).

In *Beck v. Mason*, 580 N.E.2d 290 (Ind. Ct. App. 1991), the sellers of real property argued that receipt of a $1,000 liquidated damage deposit did not preclude the sellers from pursuing the would-be purchasers for the balance of the sellers' damages when the sale did not close. The Indiana Court of Appeals disagreed.

> The operation and effect of stipulations for the payment of liquidated damages on the remedies of the parties to a contract depend on the intention of the parties. Thus, if the parties to the contract intended that the remedy of liquidated damages should be the exclusive remedy for a breach, the court will give effect to that intention. On the other hand, a liquidated damages clause does not per se restrict the remedies of the parties, and, where it does not appear that the parties so intended the clause would not be construed to restrict the remedies to the recovery of the liquidated damages.

*Id.* at 293 (citation omitted). The liquidated damages clause in the *Beck* case expressly designated that the deposit would be retained by the sellers as liquidated damages, which that court noted was relevant to ascertain the intent of the parties. *Id.* ("The description of the deposit as liquidated damages in the event of a breach indicates the parties intended to so limit their remedies.") The *Beck* court found unpersuasive the sellers' argument that because the contract did not contain a provision that limited recovery to retention of the deposit, they should be permitted to pursue damages in excess of the deposit:

> [The sellers] overlook the fact that a liquidation clause itself limits damages to a specified amount.  To hold otherwise would be to render every liquidation clause a nullity, freely adhered to or disregarded as the contracting parties see fit.  We believe the better practice, one that comports with the reasonable expectations of the contracting parties, would be to give force and effect to unambiguous liquidation clauses (such as the provision in this case).  Where the clause is ambiguous, resort may be had to extraneous evidence to determine whether the parties intended damages to be truly liquidated or not.  Parties may further stipulate that liquidated damages are supplementary to the rights and remedies of the non-breaching party (provided the damages are not penal in nature), … or merely require that the deposit be forfeited.

*Id.* at 293-94 (internal citations omitted).

*Reasoning*

The first question in evaluating the Motion as to Schwartz and Legacy is whether the Complaint is a short, plain statement of Plaintiffs' claims showing that Plaintiffs are entitled to relief, and that Schwartz and Legacy were given fair notice of Plaintiffs' claims and the grounds therefor.  The second question is whether Plaintiffs have stated plausible claims against Schwartz and Legacy upon which relief can be granted.

Taking the facts alleged in the Complaint as true, as the Court must, and drawing all reasonable inferences therefrom, the Court concludes that Plaintiffs are not entitled to the relief they seek against Schwartz and Legacy by way of the Complaint.

The applicable Contract provision is unambiguous – the Trust, as the seller, "shall be entitled to retain the entire down payment / earnest money as liquidated damages for the breach of this agreement."  The Court concludes that such provision expressly and clearly states the intention of the parties to the Contract and that the Trust elected such permissible remedy at the time the auction took place and the Contract was signed.

As in *Beck*, the Trust agreed that retention of the Down Payment would constitute liquidated damages, and the Trust has in fact retained the Down Payment tendered by Schwartz.

The Court will give full force and effect to the liquidated damages provision, and Plaintiffs cannot now attempt to elect another remedy to collect additional damages.

    Therefore, the Motion is GRANTED as to Schwartz and Legacy, and this adversary proceeding is hereby DISMISSED.

    IT IS SO ORDERED.

# # #